**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on December 20, 2007, which may be different from its entry on the record.**

**IT IS SO ORDERED.**



**Dated: December 20, 2007**

Arthur I. Harris
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Chapter 7 Proceedings |
| | ) | |
| LAVON C. RUDERSON, | ) | Case No. 05-91735 |
|     Debtor. | ) | |
| | ) | Judge Arthur I. Harris |
| DAVID TAKACS, | ) | |
| Plaintiff and Counter-Defendant, | ) | Adversary Proceeding |
| | ) | No. 06-1243 |
| v. | ) | |
| | ) | |
| LAVON C. RUDERSON, | ) | |
| Defendant and Counter-Claimant. | ) | |

MEMORANDUM OF OPINION[1]

The plaintiff, David Takacs, filed this adversary proceeding seeking: (1) a determination that a debt owed by the debtor-defendant, Lavon Ruderson, is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A); (2) entry of a money judgment on that debt in favor of Takacs and against Ruderson in the amount of

---

[1] This opinion is not intended for official publication.

$50,000, plus 8% interest from August 22, 2000, to the date of judgment; and (3) injunctive relief reinstating the mortgage securing that debt. Ruderson filed a counterclaim seeking attorney's fees incurred defending the action based upon the alleged fraud of Takacs. All of these claims stem from a mortgage debt owed by Ruderson to Takacs and the recording of an allegedly fraudulent satisfaction of that mortgage. For the reasons that follow, the Court: (1) determines that the debt owed by Ruderson to Takacs is nondischargeable pursuant to 11 U.S.C. § 523(a)(6); (2) enters judgment in favor of Takacs and against Ruderson in the amount of $50,000, plus 8% interest from August 22, 2000, to the date of judgment, with interest from the date of judgment at the rate provided by 28 U.S.C. § 1961; (3) dismisses Takacs's claim for injunctive relief reinstating the mortgage for lack of subject matter jurisdiction; (4) denies Takacs's motion to amend the complaint as being futile; and (5) dismisses without prejudice Ruderson's counterclaim for lack of prosecution.

PROCEDURAL HISTORY

On October 13, 2005, Ruderson filed a petition under Chapter 7 of the Bankruptcy Code. On March 9, 2006, the Chapter 7 trustee filed a no-asset report, and on March 14, 2006, the Court issued an order of discharge. On March 13, 2006, the plaintiff, David Takacs, initiated the above-captioned adversary

proceeding by filing a complaint alleging that Ruderson failed to make any payments on the August 20, 2000, mortgage and filed a fraudulent satisfaction of mortgage, thereby making the debt nondischargeable pursuant to 11 U.S.C. § 523(a)(2).

On May 11, 2006, Ruderson filed an answer to the complaint and asserted a counterclaim seeking attorney's fees based upon the allegation that Takacs's complaint was based upon knowingly fraudulent representations made by Takacs. Takacs did not file a reply to the counterclaim, and Ruderson never filed an application for entry of default under Rule 7055 or otherwise prosecuted her counterclaim beyond its initial filing. Both parties also failed to allege or deny core jurisdiction in their pleadings.

On August 8, 2007, the Court conducted a trial. The Court heard testimony regarding Takacs's claims for a determination of nondischargeability and entry of a money judgment. Ruderson presented no evidence in support of her counterclaim. At the trial the Court indicated it would defer ruling on Takacs's claim seeking injunctive relief. The Court indicated that all parties needed for just determination of that claim were not made parties to this proceeding. The Court also expressed doubts as to whether the Court had subject matter jurisdiction over the injunctive claim because the real property at issue is no longer property of the estate. The

3

Court granted leave to file supplemental briefing on the issues of joinder and subject matter jurisdiction until August 31, 2007. On August 31, 2007, Takacs filed a motion for leave to amend the complaint to add various parties who may be necessary for adjudication of the injunctive claim. Takacs did not file any supplemental briefing regarding subject matter jurisdiction.

## TAKACS'S CLAIMS FOR NONDISCHARGEABILITY AND ENTRY OF MONEY JUDGMENT

*Jurisdiction*

Although Takacs's complaint did not contain a statement that this proceeding is core or non-core as required by Bankruptcy Rule 7008(a), and Ruderson's answer did not admit or deny an allegation that the proceeding is core or non-core as required by Bankruptcy Rule 7012(b), the Court concludes that Takacs's claims for nondischargeability and entry of a money judgment are core proceedings. Determinations of dischargeability are core proceedings under 28 U.S.C. § 157(b)(2)(I). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio. Bankruptcy courts also have "jurisdiction to adjudge the validity and amount of a claim" when determining dischargeability. *Longo v. McLaren* (*In re McLaren*),

3 F.3d 958, 965 (6th Cir. 1993).

*Findings of Fact Pursuant to Bankruptcy Rule 7052*

The findings of fact contained in this memorandum of opinion reflect the Court's weighing of evidence, including consideration of the credibility of the witnesses. "In doing so, the court considered each witness's demeanor, the substance of the testimony, and the context in which the statements were made, recognizing that a transcript does not convey tone, attitude, body language, or nuance of expression." *In re Parrish*, 326 B.R. 708, 711 (Bankr. N.D. Ohio 2005). Even if not specifically mentioned in this decision, the Court has considered the testimony of all the witnesses, as well as all exhibits admitted into evidence. Although the Court draws no negative inference from Ruderson's failure to testify, her absence leaves the Court with little evidence to contradict the evidence presented by Takacs and his father. The following facts were established at trial.

On March 1, 1998, the debtor-defendant, Lavon C. Ruderson, entered into a land installment sales contract with the plaintiff, David Takacs, to purchase Takacs's real property located at 4759 Brainard Road, in Orange Village, Ohio. The contract provided that Ruderson would purchase the property for $190,000, with $1,700 made as a down payment, and the remaining balance to be paid in monthly installments of $1,700 beginning March 1, 1998. The contract also

provided that Ruderson must refinance by March 2000, and that Takacs would accept a one-time payment of $140,000. According to Takacs's testimony, Ruderson never made any payments as required under the land installment contract; however, the parties continued to deal with each other in order to effectuate the sale.

Sometime in the early spring of 2000, the parties again agreed that Ruderson would purchase the 4759 Brainard Road property from Takacs for $190,000.00. On March 10, 2000, Ruderson obtained a mortgage from Option One Mortgage Corporation in the amount of $144,000.00, secured by the property located at 4759 Brainard Road. On March 15, 2000, Takacs executed a warranty deed transferring his interest in real property located at 4759 Brainard Road to Ruderson. The deed was recorded with the Cuyahoga County Recorder's Office that same day. A March 15, 2000, HUD Settlement Statement indicates that Ruderson made a $50,000.00 down payment with the remaining balance due to Option One. Although the $50,000.00 referenced on the HUD statement is described as a down payment, the evidence presented at trial established that the $50,000.00 was actually a note payable to Takacs which the parties described as a down payment in order to enable Ruderson to receive favorable financing from an outside mortgage company.

In order to secure the $50,000 debt, on August 22, 2000, Ruderson granted Takacs a $50,000 mortgage with 8% interest secured by the 4759 Brainard Road property. Although the August 22, 2000, mortgage note indicates the mortgage was secured by property at 4850 Brainard Road, based upon the testimony at trial, the reference to the note secured by the 4759 Brainard Road property in the July 20, 2000, letter from Ruderson to Takacs, and the location of the number keys on the standard keyboard, the Court concludes that the 4850 address was merely a typographical error, and the parties actually intended for the note to be secured by the 4759 Brainard Road property. Although in her pleadings Ruderson denied the validity of the mortgage, she presented no evidence at trial to contradict the evidence presented by Takacs, including the expert testimony of Vickie Willard, a handwriting expert, who confirmed that, in her opinion, the signature on the mortgage was that of the debtor-defendant, Lavon C. Ruderson.

As she did with the initial land installment sales contract, Ruderson failed to make any payments on the $50,000 mortgage note. However, Takacs and his father still continued to interact with Ruderson and her parents, including renting the neighboring property, 4749 Brainard Road, to Ruderson's parents. Sometime around the spring to early summer of 2000, Ruderson's parents began discussing the possibility of purchasing the 4749 Brainard Road property from Takacs's

7

father. In a letter dated July 20, 2000, Ruderson discussed her parents' intentions and acknowledged the existence of the mortgage note on the 4759 Brainard Road property. Ruderson's letter also indicated her desire to deduct from the amount due, the amount spent on repairing damage to the basement.

On June 4, 2002, Ruderson executed a quitclaim deed transferring her interest in the 4759 Brainard Road property to the Brie Corporation, of which Ruderson was the sole shareholder. On September 3, 2003, a certificate of satisfaction was recorded with the Cuyahoga County Recorder's Office stating that Takacs had received full payment in satisfaction of the $50,000 mortgage. The testimony at trial established that Takacs did not execute the satisfaction of mortgage and Ruderson and her father, John Ivy, were the only two parties who stood to benefit from the satisfaction. Monroe B. Goins, Sr., who notarized the September 3, 2003, satisfaction of mortgage, testified that Ruderson's father, John Ivy, brought Goins the document already signed with the name David Takacs and asked Goins, as a notary, to acknowledge Takacs's signing of the satisfaction of mortgage. Goins further testified that he did not witness the signature of David Takacs, and does not recall seeing Takacs present during the signing. The Court finds by a preponderance of the evidence that the debtor-defendant, Lavon C. Ruderson, knowingly and fraudulently participated in a scheme to sell the real

property to her father free and clear of Takacs's mortgage without any of the sale proceeds being paid to Takacs on account of the mortgage, by recording a fraudulent satisfaction of the mortgage. On October 27, 2003, the Brie Corporation executed a general warranty deed transferring the property back to Ruderson. Also on October 27, 2003, Ruderson executed a general warranty deed transferring the property to her father, John Ivy. The testimony at trial established that Ruderson has no current interest in the 4759 Brainard Road property.

*Conclusions of Law*

Takacs's complaint seeks a finding of nondischargeability under 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) implements the strong bankruptcy policy of only permitting an honest debtor to receive a discharge of his or her debts. *See Cohen v. de la Cruz*, 523 U.S. 213, 217-18 (1998). Section 523 provides in pertinent part:

> (a) A discharge under section 727. . . of this title does not discharge an individual debtor from any debt –
> . . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . . .

In order to except a debt from discharge under § 523(a)(2)(A), a creditor must

9

prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of the loss. *See In re Rembert*, 141 F.3d 277, 280-81 (6th Cir. 1998).

In order for Takacs to prevail under 11 U.S.C. § 523(a)(2)(A), he must first prove that Ruderson obtained the real property with the intention of never paying the $50,000 mortgage. Although Takacs has established by a preponderance of the evidence that Ruderson knowingly and fraudulently participated in a scheme to sell the real property to her father free and clear of Takacs's mortgage without any of the sale proceeds being paid to Takacs on account of the mortgage, he has not established that she never intended to pay when she first obtained the property. Since Ruderson did not obtain the property through fraud, the debt is not nondischargeable under 11 U.S.C. § 523(a)(2)(A). *See Grogan v. Garner*, 498 U.S. 279, 282 fn. 2 (1991) ("Arguably, fraud judgments in cases in which the defendant did not obtain money, property, or services from the plaintiffs . . . are more appropriately governed by § 523(a)(6)."); *See also*, *Central Credit Union of Illinois v. Logan*, 327 B.R. 907, 910 (Bankr. N.D. Ill. 2005) (discussing how

10

proving willful and malicious injury would require a showing that the collateral was knowingly disposed of without consent, while a claim under section 523(a)(2) requires a showing that fraud was used in obtaining the loan); *cf. Pittman v. Miller*, 197 B.R. 852, 854 (S.D. Ind. 1996) (finding debt nondischargeable under 11 U.S.C. § 523(a)(2)(A) when debtor first obtained mortgage with no intention of repaying and then filed fraudulent satisfaction of mortgage).

Although in his complaint Takacs specifically alleges the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), the evidence presented at trial establishes that the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

Rule 8 of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7008, requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Bankruptcy Rule 7008(a)(2). Rule 15, made applicable by Bankruptcy Rule 7015, provides:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial on these issues. . . .

Fed. R. Civ. P. 15(b). "Thus, if an issue is tried fully by the parties, a court or

11

agency may base its decision on that issue and may deem the pleadings amended accordingly, even though the parties did not set forth the theory in the pleadings." *Yellow Freight Sys., Inc. v. Martin*, 954 F.2d 353 (6th Cir. 1992). The Sixth Circuit has stated that "[t]o establish implied consent in the context of Rule 15(b), 'it must appear that the parties understood the evidence to be aimed at the unpleaded issue.' " *Sasse v. United States Dept. of Labor*, 409 F.3d 773, 781 (6th Cir. 2005), *quoting Carlisle Equip. Co. v. United States Sec'y of Labor & Occupational Safety*, 24 F.3d 790, 795 (6th Cir. 1994). The court must examine " 'whether the [defendant] knew what conduct was in issue and had an opportunity to present his defense.' " *Sasse*, 490 F.3d at 781, *quoting Soule Glass and Glazing Co. v. NLRB*, 652 F.2d 1055, 1074 (1st Cir. 1981).

In this case, Takacs's complaint alleges that he held a mortgage upon which no payments were made by Ruderson and Ruderson forged a satisfaction of that mortgage. Ruderson's answer and the limited evidence she presented at trial were focused at establishing that there was no mortgage and that she did not sign the fraudulent satisfaction. It therefore appears that Ruderson understood the evidence to be aimed at a claim of nondischargeability based upon general fraud. Accordingly, the Court will deem the complaint to have been amended to include a claim seeking nondischargeability of the debt pursuant to 11 U.S.C. § 523(a)(6).

12

11 U.S.C. § 523(a)(6) excepts from discharge any debts:

> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

In *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), the Supreme Court clarified the meaning of "willful and malicious injury" as it appears in section 523(a)(6) to cover only those debts incurred as a result of an intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. Following the Supreme Court, the Sixth Circuit has held that unless "the actor desires to cause [the] consequences of his act, or . . . believes that the consequences are substantially certain to result from it," he has not committed a "willful and malicious injury" as defined under section 523(a)(6). *In re Markowitz*, 190 F.3d 455, 464 (6th Cir. 1999). Therefore, section 523(a)(6) excepts from discharge debts resulting from intentional torts, not negligent or reckless torts. *See Kennedy v. Mustaine* (*In re Kennedy*), 249 F.3d 576, 580 (6th Cir. 2001) (holding debt owing as a result of the intentional tort of defamation was nondischargeable); *see also Superior Metal Products v. Martin* (*In re Martin*), 321 B.R. 437, 441 (Bankr. N.D. Ohio 2004) (holding debt for conversion was nondischargeable when defendant wrongfully negotiated a check and dissipated the funds).

> In the context where a debtor has converted a creditor's collateral, it has been held . . . that the 'willful' requirement of 523(a)(6) may be indirectly

13

> established by the creditor demonstrating the existence of two facts: (1) the debtor knew of the creditor's lien rights; and (2) the debtor knew that his conduct would cause injury to those rights.

*J & A Brelage, Inc. v. Jones* (*In re Jones*), 276 B.R. 797, 802 (Bankr. N.D. Ohio 2001), *citing In re Longley*, 235 B.R. 651, 657 (10th Cir. B.A.P. 1999).

The evidence presented at trial established by a preponderance of the evidence that Ruderson purchased the real property from Takacs and promised to pay $50,000 directly to Takacs and obtain an outside mortgage for the balance. The evidence further established that Ruderson failed to make any payments on the $50,000 mortgage owed to Takacs, yet she knowingly and fraudulently participated in a scheme to sell the real property to her father free and clear of Takacs's mortgage without any of the sale proceeds being paid to Takacs on account of the mortgage. Ruderson certainly knew that filing a fraudulent satisfaction of mortgage would injure Takacs by depriving him of his security interest. Therefore, the debt owed to Takacs is nondischargeable under 11 U.S.C. § 523(a)(6). Additionally, because the evidence establishes a debt on which Ruderson made no payments, the Court enters judgment in favor of Takacs and against Ruderson in the amount of $50,000, plus 8% interest from August 22, 2000, to the date of judgment, with interest from the date of judgment at the rate provided by 28 U.S.C. § 1961.

TAKACS'S CLAIM FOR INJUNCTIVE RELIEF REINSTATING THE
MORTGAGE AND TAKACS'S MOTION TO AMEND THE COMPLAINT

11 U.S.C. §1334 grants jurisdiction to district courts in bankruptcy cases and proceedings as follows:

> (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
>
> (b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

Subsection 1334(a) vests jurisdiction in the district courts for all matters that occur within the administration of the bankruptcy case, while subsection 1334(b) vests jurisdiction in district courts for three categories of civil proceedings: (1) proceedings arising under title 11; (2) proceedings arising in cases under title 11; and (3) proceedings related to cases under title 11. *See* 1 COLLIERS ON BANKRUPTCY § 3.01[4][c] (15th ed. rev. 2006). For purposes of determining section 1334(b) jurisdiction, it is necessary only to determine whether a matter is at least "related to" the bankruptcy. *Michigan Employment Sec. Comm'n v. Wolverine* (*In re Wolverine Radio Co.*), 930 F.2d 1132, 1141 (6th Cir. 1991), *citing In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987).

The Sixth Circuit has held that "the test for determining whether a civil

15

proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Lindsey v. O'Brien (In re Dow Corning, Corp.*), 86 F.3d 482 (6th Cir. 1996), *quoting Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). "An action is 'related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.' " *Lindsey*, 86 F.3d at 489, *quoting Pacor*, 743 F.2d at 994. " '[T]here must be some nexus between the 'related' civil proceeding and the title 11 case.' " *Lindsey*, 86 F.3d at 489, *quoting Pacor*, 743 F.2d at 994.

In this case, Ruderson does not assert a property interest in the real property subject to the mortgage at issue. The Chapter 7 trustee filed a report indicating that there is no property available for distribution from the estate. Nullifying the satisfaction of mortgage would not bring the real property back into the estate and would not provide any benefit for Ruderson's creditors. At trial, the Court indicated that resolution of this claim may require the joinder of parties not already made party to this adversary proceeding, such as the current owner(s) and any lender(s) who advanced funds and took a security interest in reliance on the recording of a fraudulent satisfaction of mortgage. Takacs filed a motion to amend

16

the complaint to add necessary parties; however, because resolution of the injunctive claim has no conceivable effect on the estate and adding additional parties would not cure the lack of subject matter jurisdiction over such claim, the motion to amend the complaint is denied as being futile. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003) ("leave to amend may be denied where the amendment would be futile"), *citing Foman v. Davis*, 371 U.S. 178, 182 (1962).

Accordingly, the Court dismisses Takacs's claim for injunctive relief for lack of subject matter jurisdiction. *See Banus v. U.S. Dep't of Educ.* (*In re Banus*), Case #06-1833, fn.1 (N.D. Ohio October 12, 2006) ("it appears that the Bankruptcy Judge was not required to submit proposed findings of fact and conclusions of law and could have simply dismissed the case for lack of subject matter jurisdiction."). Takacs's motion to amend the complaint is denied as being futile.

## RUDERSON'S COUNTERCLAIM

Although Takacs never filed a reply to Ruderson's counterclaim, Ruderson herself never filed an application for entry of default under Rule 7055 or otherwise prosecuted her counterclaim beyond its initial filing. Accordingly, Ruderson's counterclaim is dismissed without prejudice pursuant to Fed. R. Civ. P. 41(b), as

made applicable by Bankruptcy Rule 7041, for failure to prosecute.

## CONCLUSION

For the reasons stated above, the Court: (1) determines that the debt owed by Ruderson to Takacs is nondischargeable pursuant to 11 U.S.C. § 523(a)(6); (2) enters judgment in favor of Takacs and against Ruderson in the amount of $50,000, plus 8% interest from August 22, 2000, to the date of judgment, with interest from the date of judgment at the rate provided by 28 U.S.C. § 1961; (3) dismisses Takacs's claim for injunctive relief reinstating the mortgage for lack of subject matter jurisdiction; (4) denies Takacs's motion to amend the complaint as being futile; and (5) dismisses without prejudice Ruderson's counterclaim for failure to prosecute.

IT IS SO ORDERED.